OFFICE OF DISCIPLINARY COUNSEL *v.* MORTON.

[Cite as Disciplinary Counsel *v.* Morton (1983), 5 Ohio St. 3d 206.]

(D.D. No. 83-10—Decided June 22, 1983.)

---

[1] DR 1-102 provides:

"(A) A lawyer shall not:

"* * *

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"* * *

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

[2] DR 6-101 states:

"(A) A lawyer shall not:

"* * *

"(3) Neglect a legal matter entrusted to him."

[3] DR 9-102 reads as follows:

"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

"(B) A lawyer shall:

"(1) Promptly notify a client of the receipt of his funds, securities or other properties.

"(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

*Mr. Angelo J. Gagliardo,* disciplinary counsel, and *Mr. Charles W. Kettlewell,* for relator.

*Mr. Robert R. Disbro* and *Mr. Rees Davis,* for respondent.

*Per Curiam.* The court has reviewed the evidence presented to the board and concurs in the board's finding that respondent violated DR 1-102(A)(4) and (6), DR 6-101(A)(3) and DR 9-102.

Respondent objects to the board's report mainly on the ground that $500 of the $1,000 deposited into his trust account by Clendenen represented respondent's fee for the legal services rendered to his client. The undisputed record evidence is otherwise. Respondent's letter to Clendenen on June 3, 1981 indicates that a $500 fee would be due *upon dismissal* of the lawsuit. However, the lawsuit was not dismissed until some time after respondent had used a portion of Clendenen's deposit for his own personal use. Moreover, after respondent used a portion of Clendenen's deposit claimed by respondent to be legal fees, respondent *billed* Clendenen for $500 in legal fees. In fact, it appears as though respondent and Clendenen became embroiled in a fee dispute which culminated with Clendenen paying $562.50 to respondent on January 4, 1982. The foregoing clearly belies any notion that a portion of the amount deposited by Clendenen into respondent's trust account on June 10, 1981 represented legal fees.

Respondent also objects to the degree of punishment recommended by the board. Respondent suggests that a public reprimand would be appropriate while relator urges that respondent be indefinitely suspended or, at a minimum, that respondent be suspended for one year. There are few ethical breaches which impact more negatively on the integrity of the legal profession than the misuse of a client's funds. As a consequence, we must reject respondent's plea for a less severe penalty. Past disciplinary proceedings would appear to indicate that the penalty for a violation of the kind committed by respondent may range from a one-year suspension to an indefinite suspension. For instance, indefinite suspensions were awarded in *Butler Cty. Bar Assn.* v. *Green* (1982), 1 Ohio St. 3d 48; *Columbus Bar Assn.* v. *Pfefferle* (1981), 65 Ohio St. 2d 4 [19 O.O.3d 121]; *Bar Assn.* v. *Canales* (1980), 62 Ohio St. 2d 207 [16 O.O.3d 243]; *Akron Bar Assn.* v. *Hughes* (1976), 46 Ohio St. 2d 369 [75 O.O.2d 446]; and *Columbus Bar Assn.* v. *Tuttle* (1975), 41 Ohio St. 2d 183 [70 O.O.2d 341]. On the other hand, the attorneys in *Akron Bar Assn.* v. *Jaynes* (1982), 70 Ohio St. 2d 276 [24 O.O.3d 363], and *Akron Bar Assn.* v.

---

"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

*Goodlet* (1982), 70 Ohio St. 2d 140 [24 O.O.3d 243], were given one-year suspensions for their professional misconduct.

In this court's judgment, in view of the particular circumstances surrounding this case, the appropriate sanction for respondent's professional misconduct is a one-year suspension. We are satisfied that respondent's misconduct represented an isolated incident of mismanagement of his trust account. However, that does not lessen the gravity of respondent's professional misconduct.

Accordingly, respondent's objections to the report and recommendation of the board are overruled, the findings of the board are adopted, and respondent is hereby suspended from the practice of law for a period of one year,[4] under the provisions of the rule.

*Judgment accordingly.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

---

[4] Relator's complaint also alleged that respondent violated his ethical obligations when a check for legal fees drawn by respondent on his trust account and made payable to co-counsel was returned for insufficient funds after the client's award had been deposited in the account. The board made no specific finding as to that charge. We must presume from their silence that the board did not feel that respondent's conduct was a violation of the Code of Professional Responsibility. We are also constrained to concur in the board's finding in that regard.